FILED

2022 Jan-24  PM 08:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**

| | |
|---|---|
| **DeMya Johnson**, | |
| Plaintiff, | Case No. 5:20-cv-02056-LCB |
| v. | |
| **Charter Communications, Inc., and Tranche Technologies, Inc.,** | Second Amended Complaint and Demand for Jury Trial |
| Defendants. | |

## SECOND AMENDED COMPLAINT

**DeMya Johnson** (Plaintiff), by and through her attorneys, **Kimmel & Silverman, P.C.**, alleges the following against **Charter Communications, Inc.** (hereinafter referred to as "Charter"), and **Tranche Technologies, Inc.** (hereinafter referred to as "Tranche") (hereinafter collectively referred to as "Defendants"):

### INTRODUCTION

1.      Plaintiff's Second Amended Complaint is based on the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227 *et seq* and causes of action relating to Negligent Hiring, Training, and Supervision as well as Spoliation of Evidence, Negligence and Fraud.

### JURISDICTION AND VENUE

2.      This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. See Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 386-87 (2012).

3.      This Court has personal jurisdiction over Defendants because Defendants conduct business in the State of Alabama.

4.      This Court has supplemental jurisdiction over Plaintiff's related state law claims pursuant to 28 U.S.C. § 1367.

5.      Venue is proper under 28 U.S.C. § 1391(b)(2).

## PARTIES

6.      Plaintiff is a natural person with a permanent place of residence in Decatur, Alabama 35601 where she is domiciled.

7.      Plaintiff is a "person" as that term is defined by 47 U.S.C. § 153(39).

8.      Defendant Charter is a corporation with its principal place of business, head office, or otherwise valid mailing address at 400 Atlantic Street, Stamford, Connecticut 16901.

9.      Charter is a "person" as that term is defined by 47 U.S.C. § 153(39).

10.     Defendant Tranche is a corporation with US offices based at 34-18 Northern Blvd., Long Island City, New York 11101.  Tranche also maintains an office at 10685-B Hazelhurst Drive, Houston, Texas 77043.

11.     Tranche is a "person" as that term is defined b7 47 U.S.C. § 153(39).

12.     Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

## FACTUAL ALLEGATIONS

### Background: Charter, its Use of Call-Centers and Tranche Technologies, Inc.

13.     Charter is the second largest cable television provider and fifth largest telephone service provider in the United States.

14.     According to its SEC Form 10-K Annual Report for 2020, Charter holds assets in excess of $140 billion.  (*See*  Charter Annual Report 2020, available at: https://ir.charter.com/static-files/c7d3ae3d-011f-4962-89cb-c098c848ed15.)

15.     Charter's cable television service is known as "Spectrum."

16.     In order to grow Spectrum/Charter's market share for cable television, Charter employs various independently-owned call centers to engage and register new subscribers.

17.     Some of those call centers are based in the United States and many are overseas.

18.     Defendant Tranche is a Pakistan-based call center operator, which advertises its "telemarketing" services. (Ex. A, Printout from Tranche's website.)[1]

19.     Tranche's website describes its telemarketing philosophy:

> An effective telemarketing process often involves two or more calls.
> The first call (or series of calls) determines the customer's needs.
> The final call (or series of calls) motivates the customer to make a purchase.

(Ex. A.)

20.     On or about July 29, 2019, Charter and Tranche entered into a "reseller marketing agreement." (*See* Ex. B, to be filed under seal, "Reseller Marketing Agreement"[2] (hereinafter the "the Agreement.")

21.     Per the Agreement, the more Spectrum cable plans Tranche sold for Charter, the more money it received on commission.  Likewise, the more Spectrum cable plans Tranche sold for Charter, the higher percentage commission it would receive.  (*See* Ex. B Bates Range Charter0003-4.)

---

[1] Tranche has US offices in New York and Houston but operates primarily from Lahore, Pakistan.

[2] Charter held itself out as Charter Communications Operating, LLC but the agreement identified Charter Communications, Inc. in the signature line.  Charter Communications, Inc. is the publicly traded company and the defendant in this lawsuit.

22.     The Agreement is described as a "strategic relationship" where Tranche as the "reseller" would market and promote Charter products through specific "Tactics" where Tranche was required to present Charter's products "as favorably as any Competitor" and promote the "name and reputation" of Charter. (Id.)

23.     The Agreement also provided Tranche a license to use, affix, copy or reproduce the Charter license.  Further, the Agreement provides that Charter shall provide Tranche training and materials.  (Id, at 00011-12.)

24.     The Agreement guarantees Charter inspection rights of the Tranche premises.  (Id., 000010.)

25.     The Agreement also dictates the language Tranche must use when selling Charter products (e.g. "no possessive, plurals, verbs or puns." (Id., 000021.)

26.     While the Agreement ostensibly prohibits outbound solicitation calls on behalf of Charter, the aforementioned incentive structure encourages vendors such as Tranche to call consumers to sign up new "leads" for Spectrum cable plans.

27.     Charter has similar agreements with vendors who operate call centers, both from the United States and overseas.

**Background: DeMya Johnson and Charter**

28.     From December 2006 until August 2021, Plaintiff DeMya Johnson, owned a cellular telephone number, the number for which was (256) XXX-8330.

29.     Seeking solitude from telemarketers and robo-callers, in December 2019, Plaintiff registered for the Federal Trade Commission's Do Not Call Registry.

30.     Plaintiff used her cell phone for primarily residential purposes.

4

31.     Despite the fact Plaintiff's cell phone number has been on the Do Not Call registry since 2019 and the fact that Plaintiff never consented to receive calls from Charter, from around November 2019 continuing through August of 2021, Charter, through its various call centers and telemarketers,  placed numerous calls to Plaintiff's cell phone for the purpose of soliciting Spectrum cable plans.

**2019 Through 2020:**
**Charter's Initial Calls to Johnson, The Small Claims Action and the**
**Connecticut and Alabama Attorney General Complaints**

32.     Charter, through its agents, including but not limited to Tranche, placed unwanted telemarketing calls to Plaintiff without her consent on instances including but not limited to:

- 11/21/2019;

- 11/25/2019;

- 11/28/2019;

- 12/03/2019;

- 12/05/2019;

- 12/16/2019;

- 12/20/2019;

- 12/23/2019;

- 12/26/2019;[3] and

- 01/24/2020.

(*See* Ex. C, Screenshots of Calls from Charter.)

---

[3] Plaintiff has confirmed the 12/26/2019 call was placed by Tranche.  The basis for that is set forth later in the Complaint.

33.     Many of the calls contained an automated or pre-recorded voice describing "low monthly rates" for cable tv plans.

34.     As a result of the foregoing, Plaintiff filed suit under the Telephone Consumer Protection Act in small claims court in Morgan County Alabama.  (*See* Ex. D, small claims lawsuit.)

35.     That case was ultimately dismissed by Plaintiff.

36.     Ms. Johnson also lodged complaints against Charter to the Alabama and Connecticut Attorneys General.  (*See* Ex. E and F, Charter response to Alabama and Connecticut Attorneys General).

37.     When Charter communicated to the Connecticut and Alabama Attorney General's offices, it had in its possession a copy of the screenshot from DeMya Johnson for the 12-26-2019 call that DeMya Johnson received from Charter.

38.     Charter also had in its possession a record reflecting a Spectrum Cable "lead" for DeMya Johnson from Tranche Technologies, Inc. on December 26, 2019.  (Ex. G, Spectrum lead data, to be filed under seal).

39.     Despite having those records, in a signed statements to the civil/consumer divisions of the two state law enforcement offices, Charter told both the Connecticut and Alabama Attorneys General that Charter did not call Plaintiff, rather "Charter is aware that there are unrelated third-parties who contact customers and mislead customers to believe the caller is associated with Charter – those calls are unauthorized and not being made on behalf of Charter." (Exhibits E and F.)

40.     Plaintiff has obtained phone records from AT&T, which confirm that the call was from Charter, not a third-party and not made by Plaintiff.  (*See* Ex. H, AT&T records.)

41.     Accordingly, not only did Charter violate consumer privacy laws, it made a false statement to two states' attorneys general's offices.

42.     Nonetheless, Plaintiff has no reason to believe Charter has corrected its statement to the Alabama Attorney General or the Connecticut Attorney General.

43.     In the subsequent months, despite the complaint to the attorneys general and despite the filing of the small claims suit for unwanted solicitation calls, Charter continued making unwanted solicitation calls to Ms. Johnson on dates including but not limited to:

- 03/11/2020;

- 07/20/2020;

- 07/20/2020 (second call that day);

- 07/32/3030;

- 09/15/2020;

- 10/08/2020;

- 10/10/2020;

- 11/03/2020;

- 11/04/2020;

- 11/04/2020;

- 11/06/2020;

- 11/10/2020;

- 11/13/2020;

- 11/27/2020;

- 11/27/2020; and

- 12/18/2020

(Ex. C.)

## **This Federal Action and the Post-Filing Unlawful Calls**

44.     Plaintiff this lawsuit on December 22, 2020 for violating the TCPA.  Plaintiff filed an Amended Complaint on January 28, 2021.

45.     Even after Plaintiff filed (her second) lawsuit, Charter continued placing unwanted telemarketing calls to Ms. Johnson, soliciting Spectrum cable plans.

46.     The unwanted post-federal lawsuit calls were made on dates including but not limited to:

- 1/7/2021;

- 1/14/2021;

- 1/18/2021;

- 1/28/2021;

- 1/6/2021

- 5/11/2021;

- 7/27/2021; and

- 8/7/2021

(See Ex C, screenshots.)

47.     Each of those calls were made for the purpose of selling Spectrum cable services and many contained a pre-recorded voice.

**Discovery and the Controversy Over the December 26, 2019 Phone Call**

48.     On or around April 5, 2021, counsel for Charter sent correspondence to Johnson's counsel, contending that Johnson's previous small claims case and complaint to the Alabama Attorney General's Office have all demonstrated that Charter did not make outbound telemarketing calls to DeMya Johnson.  (Ex. I, Kabat Chapman Letter, April 5, 2021, pp. 1-2.)

49.     Instead Charter suggested it may have been "unscrupulous companies or individuals" calling Ms. Johnson, claiming to be Charter/Spectrum. (Id.)

50.     Charter also attached to that letter, a copy of a recording which ostensibly shows Plaintiff calling in to one of Charter's "retail partners," which Plaintiff now understands to be Tranche Technology, Inc. (Ex. J, Tranche/Charter's version of the December 26, 2019[4] recording.)

51.     Charter contends that the recording shows "Plaintiff initiated the call herself (as opposed to responding to an outbound call." (Ex. I, p. 2.)

52.     Charter also suggested in that letter that other calls DeMya Johnson received from persons purportedly selling Spectrum cable may have been "unauthorized third parties may have spoofed the Displayed Number to mislead the called party." (Ex. I, p. FN 1.)

53.     In the recording, which is identified as taking place on December 27, 2019, the first 10 seconds appear to reflect DeMya Johnson calling in to Charter call center about a cable plan and a Charter representative greeting Johnson as though she had called in.  (Ex. J, Charter's version of the "Recording" from 12-26-19 audio format, to be made accessible to the Court via email to chambers.)

---

[4] The parties agree that DeMya Johnson spoke with Tranche on December 26, 2019 in the US.  The date December 27, 2019 appears to be the result of the ten-hour time difference between US Central Time and the time zome in Lahore, Pakistan, where Tranche's call center(s) are based.

54.     That was not what occurred, as a representative from a Charter call-center called Johnson.

55.     AT&T is a neutral party in this dispute, and its records match the records and recollection of DeMya Johnson: A Charter number called Johnson on December 26, 2021 and spoke for 21 minutes. (*See* Ex. H.)

56.     As soon as the manipulated call recording came to light, Plaintiff and her counsel sought to learn the precise details of what occurred and the context for same.

57.     On May 6, 2021, Plaintiff issued requests for production and interrogatories for the purpose of obtaining information relevant to Plaintiff's TCPA claims and to learn what happened with the December 26, 2019 recording.  (Ex. K, Plaintiff's discovery requests to Charter).

58.     Despite numerous email inquiries insisting that Charter provide its responses, it was not until October – over five months after the request were issued- that Charter provided somewhat substantive responses to Plaintiff's requests. (*See* Ex. L, emails from summer of 2021 re: status of discovery).

59.     As Plaintiff and her counsel waited patiently for the good-faith explanation for the discrepancy in the phone records from Charter's records, Plaintiff and her counsel were not going to accuse a telecommunications giant (or its call center vendor) of falsifying evidence without having a good-faith basis.

60.     Plaintiff thereafter waited for months for an alternative explanation from Charter as to what occurred with the December 26, 2019 recording.

61.     Despite Plaintiff's hopes, patience and professional courtesies benefiting Defendant, no explanation was provided from Charter.

62.     Months earlier, Charter was happy to accept a "lead" from Tranche for Spectrum cable plan and happy to pass off Tranche's account of what occurred to Plaintiff's counsel - and two state attorneys general.   However, now Charter is taking the position that any improper conduct was the stand-alone act of Tranche of which Charter has no responsibility and cannot speak to.  (*See* Ex. M, Defendant's Objection to Interrogatory no. 4, p. 9 "Charter is not Tranche Technologies, nor does Charter act on its behalf. Thus, Charter cannot testify as to the requested information regarding Tranche Technologies.")

63.     When no innocent explanation was offered for the recording and Charter instead tried to run out the clock on discovery, it became all the more clear Tranche has falsified a record of the recording dated December 26, 2019 in the scope of its duties as Charter's agent, in order to earn a commission from Charter in accordance with the incentive structure set up through the Agreement.

64.     Likewise, it became clear that Charter did not want the unlawful telemarketing by its agent or the tampering of evidence by its agent to become known.

**January 2022: Charter Finally Produces Confirmation It Knew Tranche Made Unlawful Telemarketing Calls and Tranche's "Recording" Was Fabricated and Discloses Tranche Was Terminated By Charter**

65.     Even though the delays in discovery were of Charter's doing, on November 16 2021, Charter opposed Plaintiff's motion to extend discovery, claiming *inter alia*, that Plaintiff's suspicions about the December 26, 2019 Recording, documentation of outbound calls from Charter and the apparent fabrication "speculative theories" that were "false".  (Doc. No. 29, pp. 2,3.)

66.     However, unbeknownst to Plaintiff at the time, Charter was saying something quite different in private- including to its vendor, Tranche.

11

67.      Specifically, on August 4, 2021, Charter's counsel wrote to Tranche concluding what Plaintiff ad long suspected the whole time: that Tranche's account of what occurred- DeMya Johnson called Charter- appeared to be false:

> Charter has no record of it making, or authorizing any telemarketing calls to the Subject Number.  Further, Tranche informed Charter that Ms. Johnson made an **inbound** call to Tranche on or about December 26, 2019, initiated through one of one of Tranche's approved websites (https://cable-tc.live/ or https://home-cable.me/.) *See enclosed* (in USB drive) Exhibit 2 (call recording from Tranche).  However, this appears to be fale.  Ms. Johnson's attorney provided to us Ms. Johnson's telephone recordings, showing that the December 26, 2019 call was not an inbound call, but rather an outbound call.  *See attached* Exhibit 3 (Johnson's call records, in relevant part).  If true, that would be a violation of the Reseller Marketing Agreement between Charter and Tranche (the "Agreement").

(Ex. N, Ltr. From Charter's counsel to Tranche, August 4, 2021, to be filed under seal.)

68.      Charter demanded Tranche indemnify Charter for the costs of this suit.  (Id.)

69.      Two weeks after that letter from Charter's counsel to Tranche, (also unbeknownst to Plaintiff or her counsel), Charter terminated Tranche. (*See* Ex. O, email and letter terminating Tranche for violating the terms of the Agreement, to be filed under seal.)

70.      Charter's representative however claimed the termination had nothing to do with the outbound calls or telemarketing, or the fabricated recording (despite the short time-frame between the events) but because Tranche had improperly used "search engine optimization."

71.      Assuming the Charter representative designated "person most knowledgeable" testified accurately about the cause of termination, that confirms Charter "prohibits" telemarketing by call center operators, such as Tranche, in words only.[5]

---

[5] Because the latest revelations only came to light days before the Motion to Amend was filed Plaintiff reserves the right to supplement this pleading in the event of new information becoming known before its formal filing.

72.     Charter encourages vendors to sign up as man subscribers as possible, which creates an incentive to make outbound calls, and if the vendor is caught making "prohibited" outbound calls and even fabricating evidence about same, that vendor is not terminated or penalized other than being asked to pay the cost in the rare instance a consumer files suit.

73.     Charter did not correct the record to any state attorneys general or to Plaintiff after conveying that Charter did not call Ms. Johnson and/or that it was Ms. Johnson that called Charter on December 26, 2019.

74.     Tranche did not unlawfully call DeMya Johnson and falsify the recording in a vacuum.  It did so because Charter's incentive structure encouraged those acts and all but guaranteed them by providing an incubator environment for them to foment and grow Charter's business (and Tranche's commissions).

75.     When it became apparent that Tranche was making unlawful telemarketing calls and had falsified evidence, Charter took no punitive action against Tranche other than seeking indemnification for this suit.

76.     Where Charter is one of the world's largest telecommunications companies with assets in excess of $140 billion and does business with millions of Americans, it is highly egregious and outrageous that Charter's agents are falsifying records in state investigations and federal lawsuits, and said records are passed on by Charter uncritically without investigation, oversite or even subsequent correct.

77.     As a result of the foregoing, Plaintiff experienced damages including litigation costs, printing costs, loss of opportunity costs annoyance, frustration, a sense she was not being respected or heard.

## COUNT I
## DEFENDANTS VIOLATED THE TCPA 47 U.S.C. § 227(b)
### *(Plaintiff v Charter and Tranche)*

78.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

79.     The TCPA prohibits placing calls using an automatic telephone dialing system or automatically generated or prerecorded voice to a cellular telephone except where the caller has the prior express consent of the called party to make such calls or where the call is made for emergency purposes. 47 U.S.C. § 227(b)(1)(A)(iii).

80.     Defendants initiated multiple telephone calls to Plaintiff's cellular telephone number using an automatic telephone dialing system or with a pre-recorded/artificial voice.

81.     Defendants' calls were not made for "emergency purposes."

82.     Defendants' calls to Plaintiff's cellular telephone without any prior express consent.

83.     Defendants' solicitation calls to Plaintiff were in the face of the fact that Plaintiff has been on the Do Not Call Registry since around December 2019.

84.     Even after Plaintiff filed suit, Charter continued calling Plaintiff.

85.     Defendants' acts as described above were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law and with the purpose of harassing Plaintiff.

86.     The acts and/or omissions of Defendants were done unfairly, unlawfully, intentionally, deceptively and fraudulently and absent bona fide error, lawful right, legal defense, legal justification or legal excuse.

14

87.     As a result of the above violations of the TCPA, Plaintiff has suffered the losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and treble damages.

## COUNT II
## DEFENDANTS VIOLATED THE TCPA 47 U.S.C. § 227(c)(5)
### *(Plaintiff v Charter and Tranche)*

88.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

89.     The TCPA prohibits any person or entity of initiating any telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the National Do-Not-Call Registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. 47 U.S.C. § 227(c).

90.     Defendants contacted Plaintiff despite the fact that Plaintiff has been on the Do Not Call Registry since around December 2019.

91.     Defendants called Plaintiff on two or more occasions during a single calendar year despite Plaintiff's registration on the Do Not Call list.

92.     Defendants' acts as described above were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law and with the purpose of harassing Plaintiff.

93.     The acts and/or omissions of Defendants were done unfairly, unlawfully, intentionally, deceptively and fraudulently and absent bona fide error, lawful right, legal defense, legal justification or legal excuse.

94.     As a result of the above violations of the TCPA, Plaintiff has suffered the losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and treble damages.

## COUNT III
### Negligent Hiring, Training and Supervision
#### (*Plaintiff v. Charter*)

95.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

96.     Plaintiff alleges that Charter failed to exercise proper care and diligence to ensure that their agents, servants and/or employees who were responsible for placing calls on their behalf were operating in a manner consistent with the TCPA and other laws and regulations.

97.     Defendant Charter had a duty to ensure that all agents entrusted with telemarketing on their behalf were adequately hired, trained and/or supervised to make telemarketing calls on behalf of Charter in a legal manner.  Charter is therefore responsible for all acts committed by those agents who were not adequately hired, trained and/or supervised to operated in a manner consistent with the rules and regulations of the TCPA within the line and scope of their employment and of their agency.

98.     Charter's failure to exercise proper care and diligence to ensure their agents or employees who made telemarketing calls on their behalf is the actual and proximate cause of Plaintiff's injuries.

99.     As a result of Charter's failure to exercise proper care and diligence to ensure their agents or employees who made *telemarketing* calls on their behalf would do so in a careful, responsible, and legal manner, was the proximate cause of Plaintiff's injuries.

100.    As a result of the above violations, Plaintiff has suffered the losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and treble damages.

**COUNT IV**
**Spoliation of Evidence**
(*Plaintiff v Tranche and Charter*)

101.    Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

102.    Spoliation occurs when one party suppresses or destroys material evidence that is favorable to the other party.

103.    Tranche's apparent alteration of the recording of the December 26, 2019 phone call is an active attempt to suppress or destroy evidence.

104.    Upon information and belief, Charter conveyed the position taken by Tranche regarding the recording (that DeMya Johnson called Charter, rather than Tranche calling Johnson on Charter's behalf) to state law enforcement agencies.

105.    As a result of Defendants' suppression or destruction of evidence, Plaintiff's ability to have a fair adjudication of her complaint to the Connecticut and Alabama Attorney General's Offices was severely prejudiced.

106.    Furthermore, if the alteration were not detected by Plaintiff, the destruction of evidence would have caused Plaintiff irreparable harm in the prosecution of her TCPA claim against Charter.

107.    The destruction of evidence was apparently undertaken by Tranche while acting in the scope of its duties as an agent, "reseller", vendor, and/or telemarketer for Charter.

108.    Tranche is directly liable for those acts and omissions whereas Charter is vicariously liable.

17

109.    Charter is one of the world's largest telecommunications companies and the fact that its agent tampered with evidence in connection with governmental investigations and lawsuit(s) in connection with Tranche/Charter's calls is egregious and outrageous.

110.    As a result of the above acts, Plaintiff has suffered the losses and damages as set forth above entitling Plaintiff to an award of punitive damages.

**COUNT V**
**Negligence**
*Plaintiff v Charter*

111.    Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

112.    Charter sought the business of DeMya Johnson, as reflected in the "lead" file it opened on her behalf.

113.    As such, Charter owed her a duty of care.

114.    As Charter sought business from Plaintiff and Plaintiff complained to the Connecticut and Alabama Attorneys General about Charter's unlawful calling, Charter owed Plaintiff a duty of care.

115.    Charter breached that duty of care when it represented that Charter did not call Plaintiff based on a falsified recording.

116.    Charter had received the small claims and Attorney General complaints with screenshots from Plaintiff reflecting an incoming call to Plaintiff on December 26, 2019 and had record of a "lead" generated by Tranche from December 26, 2019.

117.    Charter also knew or should have known that Tranche was making outbound telemarketing calls from Pakistan to US based consumers, despite its obsensible policy against such outbound calls.

118.    Even after Charter confirmed Tranche was making outbound calls to US consumers and had falsified a record, it took no punitive action against Tranche.

119.    Accordingly, Charter had reason to know or at least inquire about the veracity of the recording which purported to show Charter/Tranche *receiving* a call from DeMya Johnson.

120.    Despite having a large legal/compliance team and at least 140 billion dollars in assets,[6] Charter failed to investigate the veracity of that recording before presenting it to state attorneys general and relying on its purported veracity in litigation.

121.    Furthermore, it does not appear Charter took any steps to correct the record with those law enforcement agencies, nor did it undertake any efforts to do so in the course of this litigation.

122.    As a proximate result of the foregoing, Plaintiff suffered damages.

123.    Charter's acts and omissions were reckless and outrageous given the size of the company and the importance of consumer privacy and data accuracy in the digital age.

124.    Plaintiff therefore seeks punitive damages.

---

[6] Charter Communications, Inc. 2020 Annual Report, available at: https://ir.charter.com/static-files/c7d3ae3d-011f-4962-89cb-c098c848ed15

**COUNT VI**
**Fraud**
(***Plaintiff v Tranche***)

125.   Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

126.   In connection with the falsification of evidence set forth above, Tranche made a knowing, fraudulent and willful misrepresentation.

127.   Parties other than Plaintiff relied on Tranche's misrepresentations and Plaintiff suffered a detriment.

128.   Accordingly, Plaintiff has standing as a third-party victim to Tranche's fraud.

129.   Tranche's acts and omissions were knowing, willful, egregious and outrageous.

130.   Plaintiff is entitled to compensatory and punitive damages as a result.


WHEREFORE, Plaintiff, **DeMya Johnson,** respectfully prays for judgment against Charter Communications, Inc. and Tranche Technologies, Inc. as follows:

a.      All compensatory damages suffered pursuant to Plaintiff's negligence claim, negligent training claim, spoliation and fraud claims;

b.      Punitive damages in connection with plaintiff's negligence claim, negligent training claim, spoliation and fraud claims;

c.      Actual damages pursuant to   47 U.S.C. § 227(b)(3)(A); 47 U.S.C. § 227(c)(5)(C);

d.      Statutory damages of $500.00 per violative telephone call pursuant to both 47 U.S.C. § 227(b)(3) and § 227(c)(5)(B);

e.      Treble damages of $1,500 per violative telephone call pursuant to 47 U.S.C. §227(b)(3) and § 227(c)(5)(C);

f.      Injunctive relief pursuant to 47 U.S.C. §227(b)(3) and 227(c);

g.      Any other relief deemed appropriate by this Honorable Court.

## DEMAND FOR JURY TRIAL

**Please take notice** that Plaintiff, **DeMya Johnson,** demands a jury trial in this case.

.

Respectfully submitted,

Dated: January 24, 2022                    By: */s/ Jacob U. Ginsburg*
                                           Jacob U. Ginsburg, Esq.
                                           Admitted *Pro Hac Vice*
                                           Kimmel & Silverman, P.C.
                                           30 East Butler Ave.
                                           Ambler, PA 19002
                                           Phone: 215-540-8888 ext. 104
                                           Facsimile: 877-788-2864
                                           Email: jginsburg@creditlaw.com
                                           teamkimmel@creditlaw.com

## CERTIFICATE OF SERVICE

I, Jacob U. Ginsburg hereby certify that I served a true and correct copy of the foregoing on all counsel of record via ECF.

*/s/ Jacob U. Ginsburg*