FILED

2023 Jul-26  PM 02:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

|  |  |  |
|---|---|---|
| **DEMYA JOHNSON,** | ) |  |
|  | ) |  |
| **Plaintiff,** | ) |  |
|  | ) |  |
| **v.** | ) | **Case No.:  5:20-cv-2056-LCB** |
|  | ) |  |
| **CHARTER COMMUNICATIONS,** | ) |  |
| **INC.,** | ) |  |
|  | ) |  |
| **Defendant.** |  |  |

## <u>ORDER</u>

The Plaintiff, DeMya Johnson, filed a complaint against Charter Communications, Inc., on December 22, 2020, and amended it on two occasions. The second amended complaint, filed September 21, 2022, added Tranche Technologies, Inc., as a defendant. According to Johnson, she began receiving unwanted telemarketing calls from a company she believed to be Charter in 2019 despite having registered her telephone number on the Federal Trade Commission's "Do Not Call Registry." Through discovery, Johnson learned that Tranche, a company affiliated with Charter[1], was the entity that made at least some of the calls in question. Those unwanted calls prompted Johnson to file a complaint alleging

---

[1] Although not thoroughly explained in the filings, the Court generally understands that Charter affiliates with companies like Tranche who will respond to potential customers' inquiries about Charter services. The potential customer would not necessarily know that the entity they are speaking with is Tranche or another affiliated company.

that both Charter and Tranche violated various provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq*.  The operative complaint also alleges that Charter was negligent in its hiring, training, and supervision of Tranche; that both Charter and Tranche are liable for spoliation; that Charter was negligent; and that Tranche committed fraud.  (Doc. 93).

Charter has moved to dismiss Johnson's claims for negligence, negligent hiring, training, and supervision, and spoliation.  (Doc. 107).  The Court conducted a hearing on this motion on July 20, 2023.  Having considered the briefs and the arguments of counsel, the Court finds that the partial motion to dismiss is due to be granted.

## I.    Background

The allegations giving rise to this action are simple: Johnson received dozens of telemarketing calls from a company purporting to be Charter after placing her telephone number on a national registry indicating that she did not wish to receive such calls.  Johnson's initial complaint and her first amended complaint alleged that Charter violated the TCPA by making the calls in question.  (Docs. 1 and 8).  One of those calls was alleged to have been made on or about December 26, 2019[2].  In its answer to Johnson's amended complaint, Charter denied making any of the calls

---

[2] Because the call in question originated from a different time zone, certain documents suggest that the call was made on December 27, 2019. Johnson claims to have received the call on December 26, 2019.

(Doc. 15 at 3), and in other documents produced to plaintiff's counsel, suggested that the calls in question may have been placed by unauthorized third parties who sometimes pretend to be affiliated with Charter and who may even "spoof" a telephone number belonging to Charter in furtherance of their scheme.  But then discovery began.

Through various disclosures and communications, Charter informed Johnson that Tranche was the entity with whom she spoke on December 26, 2019.  Charter purported to have obtained a recording of that call through its investigation and, Charter said, the recording indicated that Johnson was the party who initiated the call, i.e., Johnson placed a call to Tranche to inquire about Charter's services. Despite this contention, Johnson maintained that the December 26th call was made to her, not by her.  She subpoenaed her cellular telephone records from her service provider, and those records showed that the December 26th call was inbound to Johnson, not outbound to Tranche as the recording appeared to suggest.

After Tranche was added as a defendant, it failed to timely respond to the complaint.  The Clerk therefore entered default on January 10, 2023.  (Doc. 116). However, the default was set aside when Tranche obtained counsel who entered an appearance and filed an answer.  In its answer, Tranche admitted to making two calls to Johnson in December of 2019.  (Doc. 123 at 4).  Tranche also admitted that its employees altered the recording of the December 26, 2019 call to make it appear as

though Johnson initiated the call.  (Doc. 123 at 8 and 12).  Tranche further explained in its answer that "[s]ubordinates in Pakistan working for Tranche altered the beginning of the audio recording to make it appear as though the call was initiated by the Plaintiff.  This was done by the subordinates because they were concerned about losing their jobs as a result of making outbound sales calls (prohibited by the Charter Communications Reseller Agreement)." *Id*. at 16.

At some point after Tranche filed its answer, it ceased all communication with its attorney who subsequently filed a motion to withdraw.  After a hearing on the matter, the Court granted that motion and ordered Tranche to obtain new counsel by May 9, 2023.  As of the date of this order, Tranche has failed to do so and remains silent.[3]

## II.    Jurisdiction

As noted, Johnson alleged that Charter and Tranche violated the TCPA, a federal statute, by calling her despite the fact that her telephone number was on the national Do Not Call Registry.  Thus, Counts I and II arise under the laws of the United States giving this Court original jurisdiction over those claims.  *See* 28 U.S.C. § 1331.  As to the state law claims that are the subject of this motion to dismiss, the Court finds

---

[3] Tranche has an office in New York, but the December 26th call in question was made from a call center Tranche operates in Pakistan.  The Court has instructed the Clerk to mail all orders and other communications in this case to Tranche in care of its president, Saqib Raza, at the address provided by Tranche's former counsel.

that they share a common nucleus of facts and "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367. Accordingly, the Court has supplemental jurisdiction over those claims.

## III.   Legal Standard

To survive a motion to dismiss, "a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 679. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'— 'that the pleader is entitled to relief.'" *Id*. at 679 (quoting, in part, Fed. R. Civ. P. 8(a)(2)). Thus, the Supreme Court has "suggested that courts considering motions to dismiss adopt a 'two-pronged approach' in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d

1283, 1290 (11th Cir. 2010) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544, 567 (2007)).

## IV.   Charter's Motion

Charter has moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Counts III, IV, and V of the operative complaint, i.e., all but the TCPA claims.  (Doc. 107).  The Court will address each Count in turn.

### A. Count III (Negligent Hiring, Training, and Supervision)

In Count III of her complaint, Johnson alleged that Charter "failed to exercise proper care and diligence to ensure that their agents, servants and/or employees who were responsible for placing calls on their behalf were operating in a manner consistent with the TCPA and other laws and regulations."  (Doc. 93 at 20). According to Johnson, Charter had a duty to ensure that its agents were adequately trained and supervised so as not to make telemarketing calls in violation of the law. Johnson claims that Charter is therefore responsible for all acts committed by those agents, and that its failure to exercise proper care in hiring and training those agents caused her to suffer damages.

In its motion, Charter argues that Count III is due to be dismissed because, it says, Tranche is an independent contractor—not an employee—and Charter is consequently not responsible for its actions.  (Doc. 107 at 10), citing *Russell v. Synchrony Financial*, 2018 WL 1618038, at *7 (N.D. Ala. Apr. 4, 2018) ("[I]t is a

'well-settled rule that a principal is not ordinarily liable for the torts of its independent contractor;'" granting motion to dismiss where plaintiff did not "establish the status of employer and employee"). Therefore, Charter says, Count III fails because a negligent hiring, training, and supervision claim is not viable against a principal who hires an independent contractor.

Charter goes on to argue that, even if a negligent hiring, training, and supervision claim were viable against an independent contractor, Johnson has still failed to allege sufficient facts to state a claim. To state a negligent hiring, training, and supervision claim, a plaintiff must allege facts to support that: (1) the employee committed "some sort of act, wrongdoing, or tort that caused the plaintiff's injury;" (2) "at the time of the complained-of conduct, the allegedly incompetent employee was acting within the line and scope of his employment;" and (3) "the alleged incompetence of the employee was actually known to the employer or was discoverable by the employer if it had exercised care and proper diligence." *Portera v. Winn Dixie of Montgomery, Inc.*, 996 F. Supp. 1418, 1438 (M.D. Ala. 1998); *Hovanski v. Am. Income Life Ins. Co.*, 2006 WL 8436890, at *14 (N.D. Ala. Jan. 11, 2006). A plaintiff must prove that it was foreseeable to the employer prior to the incident that made the basis of the lawsuit that the employee would commit the alleged tort. *See, e.g., Copeland v. Samford Univ.*, 686 So. 2d 190, 193 (Ala. 1996).

In response to Charter's contention that Tranche was an employee rather than an independent contractor, Johnson first correctly notes that courts must look not to the labels chosen by the parties but to the degree of control exercised by the purported master.  (Doc. 111 at 14), citing *Wright v. McKenzie*, 647 F. Supp. 2d 1293 (M.D. Al. 2009) (employment/agency versus independent contractor analysis "depends on whether the entity for whom work is performed controls, or has reserved the right to control, the means by which work is done."), citing in turn *Keebler v. Glenwood Woodyard, Inc.*, 628 So. 2d 566, 568 (Ala. 1993).  However, "[c]ontrol is not established if the employer retains only the right to supervise the employee to determine if the employee performed in conformity with the contract." *Id.*

Thus, in order to adequately allege that Tranche was Charter's employee as opposed to an independent contractor, Johnson had to allege facts which, if taken as true, would demonstrate that Charter retained sufficient control over Tranche and its operations.   The agreement between Charter and Tranche, called a "Reseller Agreement" by the parties, was attached to the operative complaint.  Therefore, it is considered a part of the pleadings.  *See, e.g., Gill ex rel. K.C.R. v. Judd,* 941 F.3d 504, 511 (11th Cir. 2019) ("In deciding whether a complaint states a claim upon which relief may be granted, we normally consider all documents that are attached to the complaint or incorporated into it by reference.").

According to Johnson, the Reseller Agreement demonstrates substantial control by Charter over Tranche for several reasons.  First, it provides for "audit rights" by Charter, which allow Charter to periodically examine Tranche's records to ensure compliance with the Reseller Agreement.  (Doc. 93-2 at 16) (filed under seal).  The Reseller Agreement also contains a section detailing both prohibited and allowable methods of marketing Charter's services.  *Id*. at 6-8.  According to Johnson, these facets of the Reseller Agreement demonstrate that Charter maintained a heightened level of control over Tranche thereby creating an employer/employee relationship.

However, the Court need not make that determination because even if the Court were to determine that Tranche was Charter's employee, Johnson's complaint still fails to allege sufficient facts to support a negligent hiring, training, and supervision claim.  As noted above, to state a claim for negligent hiring, training, and supervision, a plaintiff must sufficiently allege facts demonstrating that (1) the employee committed "some sort of act, wrongdoing, or tort that caused the plaintiff's injury;" (2) "at the time of the complained-of conduct, the allegedly incompetent employee was acting within the line and scope of his employment;" and (3) "the alleged incompetence of the employee was actually known to the employer or was discoverable by the employer if it had exercised care and proper diligence." *Portera v. Winn Dixie of Montgomery, Inc*., 996 F. Supp. 1418, 1438 (M.D. Ala. 1998).

As Charter notes in its motion to dismiss, Johnson has failed to allege any facts to support the second and third elements laid out in *Portera*. First, the Reseller Agreement specifically prohibited Tranche from making outbound marketing calls like the one made to Johnson on December 26th. (Doc. 93-2 at 6) ("Reseller is prohibited, directly or indirectly, from soliciting subscriptions via … outbound telemarketing, either live or recorded."). Thus, the Tranche employee who made the December 26th call was acting in contravention of the Reseller Agreement and, consequently, outside the scope of his employment. There are no other allegations in the complaint suggesting that outbound telemarketing was within the scope of activities Tranche was responsible for under the agreement. Similarly, there are no allegations that Charter knew or could have known—before the December 26th call—that Tranche was making such unauthorized calls. In her response, Johnson does not address Charter's contention about her failure to allege these essential elements and instead focuses on her argument that Tranche was not an independent contractor.

Thus, even if the Court were to find that Tranche was an employee as opposed to an independent contractor, Count III of Johnson's complaint still fails under Fed. R. Civ. P. 12(b)(6) because in it, she did not allege facts to support the second and third elements of a negligent hiring, training, and supervision claim. Accordingly, Count III is due to be dismissed.

**B.  Count IV (Spoliation)**

Count IV of Johnson's complaint purports to allege "spoliation of evidence" as a cause of action against Charter and Tranche.  (Doc. 93 at 21-23).   This claim is based on Tranche's admission that it altered the recording of the December 26th call between it and Johnson.  However, Charter has moved to dismiss Count IV on the ground that "spoliation" is not an independent cause of action under Alabama or federal law.  Indeed, the Alabama Supreme Court has held that "no separate cause of action [is] recognized" for spoliation when the alleged spoliator was a party to the action.  *Christian v. Kenneth Chandler Const. Co.*, 658 So. 2d 408, 413 (Ala. 1995). Similarly, "[t]here is no federal cause of action for spoliation."  *In re Elec. Mach. Enterprises, Inc.*, 416 B.R. 801, 872 (Bankr. M.D. Fla. 2009), aff'd in part, 474 B.R. 778 (M.D. Fla. 2012).

In her response, Johnson cites only to *Smith v. Atkinson*, 771 So. 2d 429, 432 (Ala. 2000), for its holding that Alabama "does recognize a claim against a third party for spoliation of evidence, under the traditional doctrine of negligence." However, neither Tranche nor Charter are "third parties" in the context of *Atkinson*. As explained in *Cole v. Owners Ins. Co.*, 326 F. Supp. 3d 1307, 1328 (N.D. Ala. 2018), "spoliation is more typically an evidentiary issue addressed by permitting the jury to make an inference of liability or guilt."  Because Tranche and Charter are both parties to this litigation—and not third parties under *Atkinson*—there is no

independent cause of action against either for spoliation.  Accordingly, Count IV is due to be dismissed.

### C. Count V (Negligence)

Count V of Johnson's complaint appears to have a good deal of overlap with Count III, her negligent hiring, training, and supervision claim.  In Count V, Johnson alleged that Charter was negligent because it created a duty of care to her by seeking her business and then breached that duty when it represented to her and two state attorneys general[4] that it did not make the calls in question.  Johnson then alleged that she suffered damages as a result of this breach.  The remainder of the allegations in Count V essentially criticize Charter for not taking a more proactive role in investigating whether Tranche was following the rules laid out in the Reseller Agreement despite Charter's vast resources.  Essentially, Johnson is claiming that Charter was negligent for not figuring out that Tranche altered the December 26th call and for relying on Tranche's false assertions in responding to her complaints.

Charter's main argument as to why Count V should be dismissed is its contention that Johnson failed to identify the source of any purported duty to her. Johnson's complaint simply asserts: "Charter sought the business of DeMya Johnson…. As such, Charter owed her a duty of care." (Doc. 93 at 23).  In response,

---

[4] Johnson also made formal complaints to regulatory bodies in two states.

Johnson cites, among other cases, *Bobo v. TVA*, 855 F.3d 1294, 1302-03 (11th Cir. 2017), in which the Eleventh Circuit held:

> The existence of a duty of care is "[f]undamental to the maintenance of a negligence action" under Alabama law. *Pugh v. Butler Tel. Co.*, 512 So.2d 1317, 1319 (Ala. 1987); see also *City of Bessemer v. Brantley*, 258 Ala. 675, 65 So.2d 160, 165 (1953) ("[W]here there is no duty, there can be no negligence."). "In Alabama, the existence of a duty is a strictly legal question to be determined by the court." *Taylor v. Smith*, 892 So.2d 887, 891 (Ala. 2004); *see also Jones Food Co. v. Shipman*, 981 So.2d 355, 361 (Ala. 2006) ("Whether the defendant in a negligence action owed the claimant a duty is strictly a question of law.") "In determining whether a duty exists ..., courts should consider a number of factors, including public policy, social considerations, and foreseeability." *Smitherman v. McCafferty*, 622 So.2d 322, 324 (Ala. 1993).

Johnson claims that Charter's duty arose based on public policy, social considerations, and foreseeability. However, as support for that contention she cites only to a statistic published by the Federal Communications Commission indicating that unwanted telemarketing calls were the number one consumer complaint as of March 7, 2022. Therefore, she argues, unwanted telemarketing calls are of broad societal concern and should form the basis of a duty to potential customers for companies who utilize telemarketers. This Court does not find any such duty to exist in this case. Accordingly, Count V is due to be dismissed.

The Court finally notes that Johnson's response to Charter's motion to dismiss leads off with the argument that the law-of-the-case doctrine prohibits the Court from granting the requested relief given its prior decision to allow her to file a second

amended complaint over Charter's objection that the amendment would be futile. (Doc. 111 at 8-11).  The Court does not find the law-of-the-case doctrine to bind it in this particular situation.  To the extent any prior order of this Court could be construed to hold that Johnson's second amended complaint adequately stated her claims in Counts III, IV, and V, those holdings are hereby set aside, and this decision substituted therefor.

## V.    Conclusion

For the foregoing reasons, Charter's partial motion to dismiss (Doc. 107) is **GRANTED**, and Counts III, IV, and V of Johnson's Second Amended Complaint are **DISMISSED WITH PREJUDICE**. Counts I and II, which are asserted against both Charter and Tranche, remain pending as does Count VI, which alleges a fraud claim against Tranche.

**DONE** and **ORDERED** July 26, 2023.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE