# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **DeMya Johnson,** *Plaintiff,* v. **Charter Communications, Inc., and Tranche Technologies, Inc.** *Defendants.* | Case No. 5:20-cv-02056-LCB Hon. Liles C. Burke |

## PLAINTIFF'S REPLY BRIEF IN FURTHER SUPPORT FOR HER MOTION FOR SUMMARY JUDGMENT

And now, Plaintiff DeMya Johnson ("Plaintiff" or "Johnson") replies to Defendant Charter Communications, Inc.' ("Charter")'s Response in Opposition to Plaintiff's Motion for Summary Judgment. Doc. No. 190 ("Charter's Opposition Brief") and Doc. No. 180 ("Plaintiff's Moving Brief"). Where most points have been argued sufficiently in Plaintiff's Moving Brief and Opposition to Charter's Motion for Summary Judgment (Doc. No. 188), Plaintiff replies only to limited points where she believes a reply is warranted.

//

**1. The operative facts of the Charter-Tranche relationship create an agency relationship.**

Charter argues that the contractual language disclaiming any agency relationship between Charter and Tranche "independent contractors" forecloses an agency relationship. Doc. No. 190, pp. 16-17. Charter relies on *CFTC v. Gibraltar Monetary Corp.*, 575 F.3d 1180 (11th Cir. 2009) in support of its position. Doc. No. 190, pp. 16-17. Charter's reliance on *Gibralter*, however is misplaced. While the Eleventh Circuit referenced the contractual language between the purported principal and agent in *Gibralter*, the analysis was almost entirely based on the operative *facts*, rather than the language of the contract. *Id*. The Eleventh Circuit based its conclusion, on the following findings of fact:

> As to control, it is undisputed that FxCM played no role in hiring, training, supervising, or disciplining GMC's employees…. Further, there is no evidence that FxCM supervised or controlled GMC's trading strategies or had a right to inspect GMC's books and records.

*Gibraltar Monetary Corp.*, 575 F.3d 1180, 1190.

Plaintiff's Moving Brief sets forth at length Charter's ability to direct and control Tranche's marketing activities. Doc. No. 180, pp. 17-22. Neither self-serving contractual language, nor the Eleventh Circuit's inapposite decision in *Gibralter,* carry the day for Charter.

Furthermore, in its Responsive Brief, Charter also cites to its contractual language to argue that Tranche cannot bind Charter in a contract.

Doc. No. 190, p. 20. However, once again, the operative facts refute Charter's contention. Charter acknowledges resellers such as Tranche have the ability to sell Spectrum cable/internet plans. See Ex. N to Doc. No. 180, 109:24-110:21. ("When they sell more and the accounts are connected, then the payments will increase"). If a reseller such as Tranche has the ability to "sell" Spectrum cable and "accounts [can be] connected" from a Tranche/reseller sale, Tranche/resellers have the ability to enter contracts on behalf of Charter.

Once more, Charter leans on the fact its contract with Tranche ostensibly prohibited outbound telemarketing. Doc. No. 190, pp. 21-23. Charter argues that even if a principal could be liable for the acts of an agent acting *ultra vires,* Tranche was acting outside the "scope of its duties" because the conduct was prohibited. Doc. No. 190, p. 23. That argument is logically untenable. By Charter's proposed interpretation, any agent acting *ultra vires* would, by definition, be acting outside the scope of its duties. However, an agent is acting in the scope of his duties for a purported principal, if the acts are could benefit the principal's business. *See Conner v. Magic City Trucking Service, Inc.,* 592 So. 2d 1048 (Ala. 1992). Even if outbound telemarketing was facially prohibited, Tranche was placing calls to sell Spectrum cable to benefit Charter's business. Whether Tranche's outbound calls were technically prohibited or contrary to Charter's written instructions

(notwithstanding the implied permission), the calls were nonetheless within Tranche's scope of duties. See *Wood v. Holiday Inns, Inc.*, 508 F.2d 167, 174 (5th Cir. 1975); *St. Louis-San Francisco Ry. Co. v. Robbins*, 219 Ala. 627, 629, 285 (Ala. 1929)

Charter had the ability to direct and control Tranche's marketing activity and had reason to know Tranche was placing outbound telemarketing calls to Johnson. Nonetheless, Charter declined to take punitive action and looked the other way. Tranche was clearly acting as Charter's agent with implied actual authority. *See Boone's Pharmacy, Inc. v. EzriRx, LLC*, No. CV 22-00375-JB-N, 2023 WL 4874785, at *4 (S.D. Ala. July 31, 2023) (implied authority is "circumstantially proved, or evidenced by conduct or inferred from course of dealing between the alleged principal and agent").

### 2. Charter fails to refute Plaintiff's claim under the theory of ratification.

In its Responsive Brief, Charter also makes several misguided contentions as it relates to Plaintiff's ratification argument.

First, Charter points out that the operative contracts in *Krakauer v. Dish Network, LLC.*, 925 F.3d 643 (4th Cir. 2019), Williams v. Pillpack LLC, F.Supp.3d __, 2022 WL 174162632022 (W.D. Wash. Dec. 5, 2022 and *McCurley v. Royal Seas Cruises, Inc.,* 2022 WL 1012471 (9th Cir. Apr. 5, 2022) all permitted outbound telemarketing. Doc. No. 190, p. 27. That,

4

however, is irrelevant. Each of the defendants in those cases were being sued for conduct they supposedly prohibited- which is why the courts were addressing the theory of ratification in the first place. If a company's contract with a vendor, purports to narrowly prohibit "illegal telemarketing" or broadly purports to prohibit all "outbound calls", it can still ratify illegal telemarketing. The scope of the contractual prohibition on the vendor is not the issue, it's whether the defendant *knew or had reason to know* of the vendor's tortious or illegal conduct. *Potts v. BE & K Constr. Co.*, 604 So.2d 398, 400 (Ala. 1992) (principal ratifies an act of its agent when 1) it expressly adopts the agent's behavior or 2) it implicitly approves agent's the behavior).

Charter also makes the misleading argument that it terminated Tranche for outbound telemarketing. Doc. No. 190, p. 26 ("Charter terminated Tranche shortly after receiving Plaintiff's AT&T records which showed Tranche's December 26, 2019 call was an outbound call to Plaintiff.") However, Charter's corporate designee went to painstaking lengths to say the exact opposite. *See* Ex. N to Moving Brief, N.T. Jones: "My understanding is that, based on our investigation, it was determined that the call was actually an inbound call made to the third-party vendor." Ex. N to Moving Brief, N.T. Jones:, p. 29:18-21.  In that deposition, Charter's corporate designee made it crystal clear, Tranche's termination had nothing to do with the altered

recording, "prohibited" telemarketing or TCPA violations, but violations of "branded advertisement" policies:

> 14 Q. So was placement of outbound calls
> 15 the reason for the termination?
> 16 A. Not in this case. That was just an
> 17 example. For this particular termination, it had
> 18 to do with branded advertisement, which violates
> 19 our policy.
> 20 Q. What kind of branded advertisement?
> 21 A. What I do know is they utilized
> 22 branded terms such as Spectrum when they shouldn't
> 23 have.
> 24 Q. When? When did they do that?
> 1 A. I don't recall the specific date.
> 2 Q. Did it have anything to do with the
> 3 calls or the communications with DeMya Johnson?
> 4 A. No, it didn't.
> 5 Q. And you say that with absolute
> 6 certainty?
> 7 MR. VARTANIAN: Asked and answered.
> 8 MR. GINSBURG: Not with absolute
> 9 certainty.
> 10 THE WITNESS: Yes. I'm certain.
> 11 BY MR. GINSBURG:
> 12 Q. Would anyone else within Charter
> 13 say anything otherwise do you think?
> 14 MR. VARTANIAN: Beyond the scope.
> 15 Object to form. Calls for speculation.
> 16 THE WITNESS: No one would say
> 17 that.

Ex. N to Doc. No. 180, pp. 76-77.[1]

Charter testified under oath with "absolute certainty' that Tranche was *not* terminated for the calls to DeMya Johnson and no one in Charter would say otherwise. Charter's latest contention that it terminated Tranche as a result of the outbound calls to Johnson -of which it had constructive knowledge for a year and a half- is revisionist history, belied by its own sworn testimony.

---

[1] Charter has not designated that passage as confidential, so Plaintiff does not redact.

Once again, Charter's acquiescence and willful blindness to Tranche's illegal robocalls and fraudulent efforts to conceal same, is textbook ratification.

### 3. Conclusion

For the foregoing reasons, and those set forth in Plaintiff's Moving Brief, Plaintiff DeMya Johnson respectfully requests the Court enter summary judgment against Defendant Charter Communications, Inc.

Respectfully submitted,

*/s/ Jacob U. Ginsburg*
Jacob U. Ginsburg, Esq. (*pro hac vice*)
Kimmel & Silverman, P.C.
30 East Butler Ave.
Ambler, PA 19002
Phone: (267) 468-5374
Facsimile: 877-788-2864
Email: jginsburg@creditlaw.com
teamkimmel@creditlaw.com

### Certificate of Service

I, Jacob U. Ginsburg hereby certify I served a true and correct copy of the foregoing on all parties of record via ECF on October 18, 2023.

*/s/ Jacob U. Ginsburg*